Good afternoon. I'm thrilled to be here for my first in-person sitting in Montgomery. My last Montgomery sitting was during COVID, so we all know how that went. So it's great to be in this courtroom for the very first time with my colleagues, Judge Abudu and Judge Hall. And the court appreciates all of your flexibility and understanding in scheduling. So with that, we'll get started. I think we have, I think everyone here knows about our lighting system. Of course, yellow is a warning, red means please finish your sentence and then stop. If you're answering our questions, of course, we'll be happy to give you more time. And with that, our first case is Greater Birmingham Ministries v. Secretary of State for the State of Alabama. Whenever you're ready, counsel. May I please support? Then cease on behalf of Secretary Allen. The NRA's public disclosure provision provides that each state shall maintain for at least two years and shall make available certain records for public inspection and, where available, photocopying at a reasonable cost. It clearly speaks to only two methods of disclosure. There is no third method. Electronic production, which GBM explicitly sought, is a matter not covered that should be treated as not covered. And even the district court agreed that electronic production is not covered. It nonetheless held that electronic production isn't always required, just sometimes, holding that the statute's unchanging text means something different in the spring versus the fall. This judicial rewrite to require a third method of disclosure must be reversed. Well, what do you think of the district court's decision based on the circumstances of this case? Number one, that you had the records already in digital format. Number two, that the plaintiffs waited so long to obtain the records that it was too close to the election. And that even if the statute didn't necessarily call for digital production, it was not prohibited under the NVRA. Your Honor, I think the statute speaks clearly to two methods of disclosure, public inspection and photocopying. Electronic production is neither of those. The three factors that the district court created do not appear anywhere in the statute. Congress was clear what methods of disclosure are required. But just to be clear, if you have the documents in digital format, there is no prohibition under the NVRA to provide them in digital format. Your Honor, I would say that if the Secretary chose to make the records available by means of electronic production, as he did here for the records responsive to the purge records request, I don't think that complies explicitly with public inspection or photocopying, but I don't think a plaintiff would have an injury to support standing or it wouldn't be an aggrieved party as required under Section 20510 to institute a lawsuit under the NVRA. I don't think that electronic production is either public inspection or photocopying. I realize that this is not, as I read it, a claim that the plaintiff brought here, but does Alabama have an open records provision that would allow a different sort of access to these documents? Your Honor, Alabama has an Open Records Act. I'm not sure whether these records would be disclosable under the Open Records Act. Under Alabama law, we certainly didn't explore that in this case. I would be surprised that state open records law would provide broader access in these circumstances. We're talking about state law requires the Secretary to make the list of active and inactive voters available to the general public, but it doesn't require a list of those purged from the voting rolls or those removed due to a disqualifying felony conviction or denied at the voter registration stage. Well, this is a good point. Does the act give us any standards to judge whether the records have been made publicly available? Your Honor, Congress said that the records must be available by means of public inspection and photocopying. I think public inspection has an ordinary meaning. Inspecting is looking at the records closely. I think public inspection is going to where the records are located. There isn't an allegation that the Secretary failed to provide public inspection or photocopying here. We're talking about a third method that's not required under the NBRA. Do you think it would be enough, and let me be clear, I know that this was not the rule that Alabama put forth, but do you think for public inspection it would be enough to offer the records for one hour a day, one day per month? Would that be sufficient? I'm not sure, Your Honor, and that's certainly not what would have occurred here under the public inspection policy that was adopted after GBM already refused the Secretary's offers of public inspection. But I think the language public inspection, inspect, a close examination, you have to make the records available for a close examination. I don't think the Secretary could put these records at the top of Mount Everest and say, we've made them available, that's where they're located. But, again, the Secretary made unqualified offers of public inspection here, which GBM refused. GBM does not have an injury related to public inspection that it didn't want, and it did not provide the Secretary notice as required under 20510 to institute the suit. And your brief infers that disclosure is limited to the required removal program, excuse me, subsection A-4, but the disclosure provision in I-1 never refers back to A-4. So why should we read that limitation in? Your Honor, I think it would be helpful to outline the entirety of our argument here. What Your Honor is referencing is certainly a piece of our broader argument, but our principal point is that the nuanced language in subsection I should be treated in a nuanced way. There are many words of limitation in the statute, and I think the task at issue here is giving effect to those words of limitation. Congress could have said all records touching on voting, but it didn't. So the first argument is that these words of limitation refer to list maintenance, which is a distinct concept from voter registration. And because denials at the voter registration stage don't relate to list maintenance, that part of the felony records request doesn't fall within the scope. In probably a half dozen other sections, Congress did know how to refer back to previous sections of the Act. Why should we assume that they implicitly did that here when they did so explicitly in so many other situations? Your Honor, I agree that Congress wasn't as explicit as it could have been, but it certainly used language that appears in other provisions in section 20507. In subsection B, it links the programs and activities language with the accurate and current language, or both of those sets of language are in subsection I, and then it uses the term maintenance with that. Then in the purposes section, 20501B4, it links the accuracy and currency language to maintenance again. And I think, as we stated in our brief, the FEC believes that what Congress is referring to with this intricate phraseology is list maintenance. But why isn't it list maintenance? There are certain categories of felonies that bar a person from voting, right? So why isn't it list maintenance to update the rules to keep those people from being on those rules? Yes, Your Honor. So that gets to our more specific argument regarding the kind of list maintenance that's at issue. Section 20507 principally concerns this general list maintenance program that the NBRA requires for removals based on change of address and death. It makes removals based on disqualifying felony status permissive, and it's exempted from the 90-day bar. And the only records that Congress explicitly specified that states have to maintain, and that's under section I.2, are records about the general list maintenance program for change of address and death. This court in Bolido said that section 20507 is structured to treat ineligibility categories differently. But this second issue isn't dispositive, Your Honors. I think it's not necessary to reach the result here. And that's because GBM has consistently maintained that the only method by which it wants the records here is through electronic production. And we can see this in the notice letters that were required to institute this lawsuit. They said electronic copies have to be made available for free. Then in the amended complaint, in the prayer for relief, they asked the district court to declare that defendant is in violation of the NBRA by refusing to produce records in the format requested. And we argue that this issue was dispositive at page 22 of our brief, and GBM and the United States did not contest that. So I just want to be clear. Would you agree there's no prohibition against the Secretary of State providing the records in an electronic format? Is that, you would agree with that? Your Honor, I do not agree that the NBRA requires those methods. Would you agree that there's no prohibition against the Secretary of State providing the documents in electronic format? That's correct, Your Honor. So if the Secretary of State provides one party based on the Secretary's discretion with documents in electronic format and decides that another voter registration entity asked for the same documents, but the Secretary refuses to provide it in electronic format, what standard governs the exercise of the Secretary's discretion? I don't think the NBRA does, Your Honor, because the NBRA does not speak to electronic production. Whether the Secretary chooses to go above and beyond the statute, again, as he did here for the purge voter request, that's his prerogative. That's not what the statute requires. So GBM hasn't raised any claim like that, have they? No, Your Honor. Okay. And if electronic production is not covered, that means the fee that the Secretary charges for electronic production and his failure to provide the records responsive to the felony records request cannot violate the NBRA. I agree with you that depending on the outcome, the first question could be dispositive and we wouldn't have to reach the second issue. Well, let's assume we accept your argument that focuses on the plain text and narrowly construe the statute based on the text. Couldn't we also still answer the second question? We have the option to do that. It wouldn't moot it, would it? No, Your Honor. I don't think the issue would be moot. Okay. But then let me go to the second question. Why shouldn't we apply the same kind of construction you're asking for as to the first question when the language reads, all records concerning the implementation of programs and activities conducted for purposes of ensuring the accuracy and currency of official lists? And there's no express reference to something else in there. There's no cross-reference, right? That's correct, Your Honor. All right. So this is highly broad language. The implementation of program and activities conducted for purposes of accuracy and currency of official lists. And it seems to me voter registration clearly has to fall within that language absent some other argument. Would you agree with that? I know you have another argument that it should be construed as a statute as a whole, but just take the first language itself. You'd have to admit that would cover voter registration. Your Honor, may I respond to the question? I see my time has passed. Your Honor, if Just on this language in that part of the statute. Your Honor, if you take each individual word in the statute and pull it out and mount it on a definitional slide, give those words the most broad meaning, and then put them together, I agree that voter registration would fit under that. But I don't believe that I'm not taking it word by word. I'm just saying programs and activities. Let's try that phrase. Programs and activities to ensure accuracy and currency of eligible voters. How could voter registration and looking as to whether they were registered or not, not fall within that. How can you say that? Your Honor, when looking at the other usages of the programs and activities language, the accurate and correct language That means looking elsewhere in the statute. Yes, Your Honor. I think a contextual reading of the statute requires that. Thank you. Thank you. Thank you. Ms. Lange. Good afternoon, Your Honors, and may it please the Court. My name is Danielle Lange, and I represent Plaintiff Freda Birmingham Industries in this case. This case is about a series of obstacles that Alabama has erected to frustrate and evade the plain meaning of the National Voter Registration Act's public disclosure provision. GBM's request for records in this case was a run-of-the-mill public disclosure request, but Alabama met that request with nothing but obstruction. First, Alabama asks you to engage in a series of atextual statutory gymnastics to drastically limit the reach of a broad public disclosure provision that is aimed at allowing the public to independently scrutinize a state's voter registration practices. So you had me at atextual. Where do you get the circumstance-based approach in the text that I think I read your brief as arguing for? Yes, Your Honor. Where do you find that in the text? So I think that where I find that approach is that the make-available-for-public-inspection language is inherently a standard. So earlier during this argument, Your Honor, you asked, kind of, what are the standards for what does it mean to make available for public inspection? And while the state would tell you the public inspection has one meaning, in-person inspection, it cannot point you to any dictionary definition that suggests as much. And that's because the dictionary actually just says you have to make it available, which is defined as obtainable or usable, to closely scrutinize. And so a court has to consider the facts in order to determine whether or not a state has, in fact, made these records available for public scrutiny. If that's true, then why do we have the photocopying provision? Because if make-available-for-public-inspection means essentially offer the records for the people to take with them in whatever format they deem most helpful, then why does the statute specify photocopying? So two responses, Your Honor. First, I do not think that public inspection means that the requesters get to dictate the way that they think is the best way for them. What I do think is that a court has to consider whether or not the processes and procedures that a state has put in place reasonably make available for public inspection the records. And Alabama's suggestion that the public could be required to review over 3.7 million individualized voter registration records under supervision with limited note-taking, with no cell phones, and no electronic media at four hours a day is not making those records available for public scrutiny. I'm not necessarily saying – I think for purposes of argument, I would say as a matter of policy, I might think that that inspection is a little bit narrow. But I didn't see anything in your complaint about that. Can you point me to a spot in your complaint where you raised the sufficiency of the public inspection procedures that Alabama put in place as opposed to the lack of electronic disclosure? I don't have the exact paragraph numbers, but what I can tell you, Your Honor, is that our complaint made a specific complaint that they are not making things available for public inspection and that our claim for relief, the broadest relief we wanted, was electronic records. But of course, the district court was well within its rights to say, well, you're not entitled to 100 percent of the relief that you've asked for, but you also are entitled to more than what the state has offered. And I think that's exactly what Judge Thompson said. And then he said, in the circumstances of this case, I actually will give you exactly what you've requested because of the timeline and whatnot, as Judge Abudu mentioned. Is there an example that you can think of where a circumstances-based approach in 2023 would not lead to electronic disclosure? Yes, Your Honor. So I can give you a couple of examples. So voter registration forms themselves are not kept electronically by the registrars. So let's set aside documents that are actually in hard copy because I think that's different. But if records are only maintained in an electronic form, is there a circumstance in which you think that these circumstances would not say that electronic discovery was required? I think yes, Your Honor. For example, if there was a procedures manual that the Secretary was refusing to kind of provide a copy of that you could come and read it, I think that would be annoying and quite possibly a waste of everyone's time. But I'm not sure that you could say that it isn't available for public inspection in the way that 3.7 million individualized records are not meaningfully available in this way. And I think if you look at the state's policy, it seems like it's tailor-made to ensure that the public cannot actually scrutinize the records. They know that folks need to be able to do sorting of this data. They need to be able to cross-compare this data in order to be able to do anything useful with it. And the record below shows that the only reason for this policy, the deposition testimony is that the only reason for this policy is they wanted to be able to maintain their fee structure for providing these records. So this isn't about protecting privacy. This is about maintaining their fee structure. And I think that, you know, in footnote two of the district court's opinion, it says it's hard to understand what the purpose of this policy, except for to frustrate public access to these records. And I think the state has admitted as much, that we think that we can get around the NVRA through this method and continue to charge a fee much higher than any other state in the nation for our voter records. But is it getting around the NVRA if they say you can come inspect, you, the public, can come inspect these records? Isn't that, why isn't that just following to, frankly, a minimal degree? But why is that anything but following the NVRA? I think it gets back to the exact question you asked earlier, Your Honor, about, you know, if it was at, you know, the top of Mount Empress for one day a week or one day a month, would that be available for public inspection? I don't think that there's any limiting principle in what the state has put forward to suggest that that's not exactly what they could do. And is, as a practical matter, exactly what they have done. There is no practical use whatsoever to inspecting records in this way. As the state has set it up, it knows that, and that's why it's done it that way. I think it's an interesting argument to make that what they've done doesn't qualify as public inspection. But I'm still not getting the textual hook between why that requires, why public inspection would require giving people electronic records. And I'm also not seeing where you all have raised that particular argument in your complaint. So the complaint does indicate a claim for the failure to provide adequate access under the public disclosure provision. Right, but the argument, as I read it, was not we need longer access or we need to be able to write things down or take photos or, you know, do other things. It's we need electronic disclosure of these records. That is the relief that we sought. But, of course, district courts always have the right to grant you not 100% of your relief. I do think that in the context of thousands and thousands of individualized records, I do think that electronic disclosure is usually what it's going to mean to provide for public inspection. And I think it's worth pausing on what the state said earlier, which is that electronic protection wouldn't comply with the public inspection provision. And I think that's the absurd result that the state's reading leads you to is that, in fact, their argument is that if a state willingly provided all of these records by electronic disclosure, that they wouldn't have made those available for public inspection. That plainly can't be the case. I have a question about one other. I'm a little bit curious about an inconsistency, I think, in your argument. But maybe you can help me sort it out. If you say that electronic disclosure is public inspection, I don't see where the statute lists any fees for public inspection. The fees seem to be for photocopying. So I would think that if this is public inspection, then your argument would be we shouldn't have to pay any fees. These fees are not reasonable photocopy fees. Can you sort that out for me? Yeah, indeed. I think that we quite reasonably could make that argument. I think we were conceding for the purposes of trying to reach agreement with the state that we would be willing to pay reasonable costs of production. And that one reasonable reading of the statute would be to say that the statute does account for reasonable costs of production, and so the state should be allowed to recoup those costs. But Project Vote v. Kemp, for example, I think would propose exactly what you're saying, Your Honor, which is that these should be required to be provided for free. The state argues against that proposition, but I think that's at war with their own textual reading. But I think it's not at issue here because we didn't press that argument, but I do think we would have been entitled to do so. I have one point that the state raised that I just do want to make sure I raise, which is that the state said that we do not need to reach the felony records kind of scope issue if you find against us on the electronic records issue. I think that's flatly wrong, Your Honor. I think my client very much would pay for these records if they were forced to do so in order to get access to them, and so their entitlement to the access to the records is plainly at issue regardless of how the electronic records issue is. Why does the willingness to pay for the records to get them mean that we would need to decide whether they qualified? Because as I understand it, if we accepted Alabama's argument, there would be no requirement under the statute for electronic disclosure. I should rephrase, Your Honor. Our client is injured by the lack of any access to the records, even if the records are only made available via public inspection. I also understand it to be the state's policy that if they are forced to provide these records, they will offer to sell them, and so as a practical matter, the plaintiff will be able to purchase them. But there is a separate injury to the lack of any access to the records that is in addition to the limited access provided by the state's current policy. Do you know if Alabama has any sort of open records law or regulation that would, I understand you, I don't believe you've raised this claim, but is there another avenue for seeking these records besides the NVRA? Yes, Your Honor, I think so. I will confess to having not looked into the details of it, but there are several statutes that touch on access to voter registration records in Alabama, and importantly, one of them that is discussed in this case is the law that was passed as an Alabama statute implementing the National Voter Registration Act, and that statute specifically as an effort to implement the NVRA provides for electronic copies at a reasonable cost. And we have no quarrel with that statute. What is that statute? It was Act 94-826. This is an Alabama Open Records Act law? Actually, it is a specific law related to voter registration records in particular. And it's Alabama Act 94-826. I can't get you the kind of code citation. That's all right. I can find it. So why not file suit under that law? I think we could, Your Honor. I think that it does run up into the questions that Mr. Cease was saying about the exact scope. I don't think that that statute mirrors the language exactly, and so you'd have to have an argument about whether or not it was fully implementing the NVRA, and so it makes more sense to go directly to the source text. Thank you. Thank you very much, Your Honor. Mr. Bocat-Lindell. Good afternoon. May it please the Court, Noah Bocat-Lindell for the United States. I'd like to start out just to give Judge Hull the citation that was just being asked for for the Alabama law. It's Alabama Code Section 17-4-38, and this is a separate provision to implement the NVRA that's separate from the overall Open Records Act. If I can, I would like to just get first at some of the questions that Judge Grant and Judge Hull were asking about the scope of Section 8i and then address the electronic disclosure issue. On the scope of Section 8i, the Secretary has put forward, by my count, three different readings of Section 8i in his briefing. The overall idea that this is limited only to list maintenance records overall, the more narrow reading that it's only limited to the two mandatory programs in Section 8a-4, and then this even narrower reading on page 48 of their opening brief that it's limited to policy manuals related to those two mandatory provisions, any of those readings would eviscerate much of the text of Section 8i. All of these arguments, for example, would make entirely superfluous the two explicit exemptions listed in Section 8i-1. Those are for declinations to register and the agency at which a person is registered. Speaking only for myself, I think Alabama is likely to have tough sledding on those provisions, so I'm actually curious about the electronic disclosure. You have, I think, a different argument than your friends at the table and maybe in the district court. You say that these electronic files are photocopying, right? That's our secondary argument. Our primary argument is that essentially this is a very narrow question, as Judge Abudu was referencing before. The issue here is whether the district court abused its discretion in issuing this particular form of injunctive relief after finding that there was a violation of the public inspection provision under the facts of this case. So we think that the states do have flexibility in implementing Section 8i's public inspection requirement, but given the facts that the district court found here and which are not contested, the fact that these records were already digital, that they deal with 159,000 Alabamians, that Alabama was not providing any sort of meaningful ability for someone to subject these records to the close scrutiny that the statute requires, and the fact that alternative means of getting access to this information would impose undue hardships not just on GBM but on the Secretary as well. It was not an abuse of discretion to tell us to do that. Where do you find any of that in the text, though? The text is pretty specific, right? Well, the text talks about making available for public inspection, and I think that the Secretary's concessions earlier in the argument that just leaving it up on the top of Mount Everest would not be enough shows that there is some actual teeth to the idea of public inspection and that there's a line-drawing exercise that will have to happen no matter what. But it doesn't seem to me that that's really what the debate was in the district court or in the brief, not we need eight hours a day and we need to be able to take photographs. This has all been driven toward electronic disclosure, and I understand why, right? I too would want electronic disclosure if I were using these, if I wanted to try to make something of these documents. But do you see a spot in the modern era where electronic-only documents would not be required to have electronic disclosure under kind of the circumstances-based approach? Yes, Your Honor. I think certainly if it were a limited number of documents, even if they were electronic, then it would be reasonable for the state to say, well, we want you to come to the office and look at these on a computer rather than giving them to you electronically. I think even sometimes with somewhat larger numbers of documents, it certainly just depends on the circumstances of the case. And we have to also read this text, not just in terms of the specific words public inspection, but as this court said in Bellitto and in Arcia, the text of the statute, the meaning of the text needs to be determined in context of the entire statute, and that means both what this disclosure provision is being designed to do as well as the statute's purposes, which unlike most other statutes, Congress codified into the text of the statute. So judges just get to update the statute? No. This is not a matter of updating the statute, and this is where the photocopying provision still does some work, even reading the public inspection provision this way. Hard copy documents, whenever photocopying is capable, whenever a state is capable of providing photocopying, they must provide it, whereas public inspection does not always require electronic- But why would electronic production be photocopying? If I hand one of my clerks a marked-up case and say, please give me a photocopy of this, and they email me a document, that's not going to be the same thing, is it? Well, again, this gets to this question of both photocopying technologically as well as in terms of the statutory language. It seems that they're the same, right? I mean, in 1990, whatever this statute was passed in, there was no- I mean, photocopying meant a very specific thing, which is different than copying. Yes, although I will note, to the extent that this is something that you would take into account, the conference report on the statute uses the word copying, so certainly the conferees, at least, didn't really see a difference between the two. And today, laser printing uses essentially the same technology as photocopying. So if we're going to split these hairs in this way, it starts to become a rather fine line-drawing process if you're looking at the entire context of the statute. This is a second-order provision that is being used to implement every single other primary requirement of the statute, both on the voter registration side and on the list maintenance side. And so the problem here is we have not just organizations like GBM, but, for example, there was a First Circuit case that was argued last month, Public Interest Legal Foundation versus Bellows, where Public Interest Legal Foundation was seeking access to Maine's entire voter file in order to be able to cross-check that information with those of other states and with other information that they could gain access to to determine whether Maine was complying with its list maintenance requirements under the statute. Under Alabama's reading of this provision, the 3.7 million people in Alabama, the Public Interest Legal Foundation or some other group that wanted to be able to determine whether the list maintenance requirements were being met, would have to go in and look at them and wouldn't be able to cross-check them against anything else. So it would not actually provide any sort of meaningful disclosure. I would also point out, in terms of this being a sort of narrow decision about this particular case, that Alabama is an extreme outlier in this regard, both nationwide and within this circuit. Almost without exception, states provide electronic disclosure of electronic documents under the NVRA. So this is not something that comes up very much. I've only found three cases, aside from this one, where a state has tried to resist electronic disclosure. What are the cases? One is Campaign Legal Center versus Scott, which we cite in our brief. A second one is Public Interest Legal Foundation versus Matthews. That's a case out of Illinois, which we also cite in our brief. And Illinois had a statute that worked much like the policy that Alabama attempted to implement here. And then there was a third case, which we did not cite in our brief, which also dealt with Illinois, and that was the Illinois Conservative Union versus Illinois. In all of those cases, the district court rejected the argument that electronic disclosure was not required. But this is the normal process by which states provide these sorts of records, and Alabama's argument, as they at one point pointed out, would suggest that actually it would be a violation of the statute for what all of these states do as a traditional matter, for them to provide it by electronic production instead of in their office. I'm sorry. I see I'm well over time. Thank you. You've saved your three minutes for rebuttal. I actually have two questions. One is in response to the United States' comment that it seems that Alabama is saying that it would be a violation to provide the documents in electronic format. But earlier you stated that the Secretary enjoys discretion as to whether or not to provide the documents in that format. Can you just clarify what position Alabama is holding? Your Honor, if the Secretary only chose to make the records available in electronic format, which is at his discretion, then I think it would be questionable whether he has provided public inspection or photocopying under the NVRA. So I don't think those positions are inconsistent, Your Honor. Okay. Why? Because the Secretary can provide the documents in electronic format, other than your position in terms of statutory interpretation, why is the Secretary resistant to providing them in electronic format, especially if, as the United States says, all the other states are going in that direction? Your Honor, the Secretary was not resistant to providing the documents in electronic format. It offered the records to GBM to purchase electronically for a standard longstanding fee of one cent per name. Okay. My last question, at least for right now, is it seems that the District Court's decision was actually a very narrow holding focused on the particular facts of this case, especially in light of an upcoming election. Would it be more appropriate for this Court to just remand the issue as to the general interpretation of the NVRA with respect to the digital format issue? Should we just remand that for the Court to finish, put a bow around that question and then bring it back to us? Or is it indeed appropriate for us to rule on that particular issue now? Your Honor, it is indeed appropriate. The bow has already been put on this public inspection issue. The District Court chose to ignore the plain language of the NVRA to find that the statute's plain text means something different in the spring versus the fall. Electronic production is never required, no matter the circumstances, based on the plain language of the statute. You said a moment ago that the Secretary offered the electronic records for $1,600. Was that in the course of this litigation, or was there some discussion before the litigation was filed? Your Honor, there were a series of letters, probably ten letters back and forth in pre-litigation communications. Is any of that in this record? Yes, Your Honor. Okay, so even today, you would give it to them in electronic format, one cent per name. I mean, there's no doubt about it. For the first voter request, Your Honor. Okay, so we'd have to rule on the voter registration part. Is that correct? No, Your Honor, because the Secretary is not required to provide electronic copies. The Secretary could deny that request because GDM consistently sought electronic copies Okay, so there was never an offer to do one cent per name on everything they were asking for, all $159,000? Correct, Your Honor. Okay. Well, now I'm confused. Was there an offer to give, and this may be what Judge Hull just asked, but was there an offer to give GDM everything that they were requesting for a certain price as a matter of the Secretary's discretion, and not as a matter of the Secretary's alleged legal duties? Your Honor, there are two kind of categories here with regards to the NBRA request. There's the first voter request. That's the felony convictions. No, Your Honor. The first voter request refers to the general maintenance program every four years. So after the 2020 election, the voters removed Okay, all right. That's one category. What's the other one? The felony records request. Those denied at the voter registration stage or those removed from the rolls due to a disqualifying felony conviction. As to the former, the purge voter request, the Secretary offered those records for one cent per name. Well, if the court considers all of this required, would you still do it at one cent per name? Your Honor, I'm not sure because when the felony records request was made, the Secretary said that the records went beyond the scope of the NBRA. I'm not sure, Your Honor. So the second category that you were about to discuss, it sounds like there was never an offer to provide those records before litigation. That's correct, Your Honor. Was there a request for those records before litigation? Yes, Your Honor. And what was the distinction that the Secretary drew between Group A and Group B? He said that the records responsive to the felony records request went beyond the NBRA scope. Well, right, but if the NBRA doesn't require electronic disclosure anyway, why would the Secretary volunteer? You're saying that he was exercising his discretion to go beyond what the statute required for the records that the statute would require disclosure of, but what he thought the statute didn't require, he would not exercise his discretion to offer in any form? Yes, Your Honor, that's largely correct. He determined that the records responsive to the felony records request went beyond the scope so that there was no consideration about what format those records would be provided in. Well, that makes me think that perhaps your friends at the other table are right, that they would need to know, regardless of whether we thought the electronic disclosure was required, we would need to say whether we thought the acts applied to this second set of records. No, Your Honor. GVM consistently sought electronic copies. That's what it said in the amended complaint in the notice letter required to institute suit. That's the purpose of these notice letters, Your Honor, to make their position clear to prevent flip-flopping later down the road, and that's what's happening here with GVM's focus on the public inspection policy, public inspection it didn't want. So you think all they're asking for is electronic disclosure, so unless they ask for something other than that, if the Secretary grants or denies electronic disclosure for either category, that's a complete matter of his discretion, but then for any of those records for which access is required, I'm not saying this very clearly at all. All right, so there's A and B, right? Yes. A, he agrees that the act requires disclosure, but instead of offering public inspection or in addition to, he offered electronic disclosure because he thinks the act applies to those records in the first place. Is that right? I would go with that slightly, Your Honor. For this litigation, we did not contest that those records are within the scope, but the Secretary responded to the request and was willing to make those records available. Okay, but for B, since he thinks that those are not required to be disclosed at all, he did not offer electronic disclosure. Are the plaintiffs being offered, or would the plaintiffs have been offered in-person inspection for those particular records? Assuming they were within the scope, I believe so. But if they were not, if they were not within the terms of the statute, I'm not saying they're not, but if they were not, then the Secretary would not offer any sort of disclosure. Is that correct?  Okay, now I think I understand. Thank you. Okay, I'm sorry, I have one more question. The $159,000, are they only the purge voters? Your Honor, I believe the $159,000 figure is all of the requests, the purge voters, those denied at the felony. I believe it's $135,000, a little over that, for the purge voter requests. Which you were willing to do at one cent per name? Yes, Your Honor. And you were not willing to do the felonies because of the voter registration issue, I mean, of the scope issue? Yes, Your Honor. And you think those are only around $4,000? You said $135,000 to $139,000 or $135,000 to $159,000? Your Honor, it is 16,368 removals, so those removed from the rolls after they were registered at one point. And then it's 7,695 denials at the voter registration stage. And they all were felony? Yes, Your Honor. Okay, so that would be around $23,000? Yes. So is that $230 we're talking about? At one cent per name? Is that what this is about? No, Your Honor. I know it's about scope. From your point of view, it's about scope. I got it. Okay. Thank you, Your Honor. Thank you. We appreciate your argument, and we'll move to our next case. Thank you. Next we have...